UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SANJAY TRIPATHY,

               Plaintiff,

      -v-

ANDREA N. SCHNEIDER Acting
Superintendent Gowanda CF, Gowanda
NY, D. LOCKWOOD Acting Deputy
Superintendent of Security, Gowanda CF,
Gowanda NY, M.D. JOHN MORLEY
Deputy Commissioner and Chief Medical
Officer, DOCCS, Albany, NY, ANTHONY
J. ANNUCCI Acting Commissioner,
DOCCS, Albany, NY, and ANDREW M.
CUOMO Governor, New York State,
Albany, NY,

               Defendants.
_____

                      21-CV-6392-FPG

                      ORDER

## INTRODUCTION

*Pro se* Plaintiff Sanjay Tripathy, an inmate incarcerated at the Fishkill Correctional

Facility, filed this action seeking relief under 42 U.S.C. § 1983, the Americans with

Disabilities Act ("ADA") and the Rehabilitation Act ("RA") regarding events which occurred

while he was incarcerated at the Gowanda Correctional Facility ("Gowanda").  Plaintiff

alleges that Defendants exposed him to risks related to the COVID-19 pandemic in

violation of his rights under the Eighth and Fourteenth Amendments, as well as the ADA

and RA.  In its initial screening order, the Court dismissed the Complaint pursuant to 28

U.S.C. § 1915A(a) with leave to amend.  ECF No. 2.  Plaintiff filed an Amended Complaint,

ECF No. 5, and, for the reasons discussed below, the conditions of confinement claim will proceed to service against Defendants Schneider, Lockwood, and Haque, and the remaining claims are dismissed with prejudice.

## DISCUSSION

Under 28 U.S.C. § 1915A(a), this Court is required to screen the Amended Complaint. Section 1915A "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1)-(2).

## I.    The Amended Complaint

In evaluating the Amended Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) (discussing pleading standard in pro se cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the

2

most unsustainable of cases.").  Although "a court is obliged to construe [pro se] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted pro se must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73, 79  (2d Cir. 2004).

## II.   Section 1983

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against a prison official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the prison's chain of command.  *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).  Moreover, the theory of *respondeat superior* is not available in a § 1983 action.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).  "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own

3

individual actions, has violated the Constitution."  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks omitted).

### III.   Plaintiff's Allegations[1]

The Amended Complaint is substantially similar to the original Complaint in alleging Defendants' failure to implement or enforce safety protocols to control the spread of COVID-19.  Presumed true at this stage of the proceedings, the amended pleadings state that Gowanda has failed to implement social distancing, "especially in Plaintiff's [dorm,] which has been stuffed with 51 inmates."  ECF No. 5 at 11.  The masking mandates are "rarely and sporadically enforced," and testing is "[n]on-existent and inadequate."  *Id.*  There are "[p]oor, non-existent cleaning, quarantine and sanitation protocols," and inmates are moved between housing dorms and prison "without adequate testing."  *Id.* at 12.  Critical care is delayed by staff members who are untrained in handling COVID-related emergencies.  *Id.*  The facility has "very poor ventilation" and "high amounts of indoor[] smoking."  *Id.*  Plaintiff, "per CDC[,] has the highest risk of death from Covid-19, due to severe underlying medical conditions."  *Id.* at 11.  Plaintiff suffers from a "constant fear of death," poor mental health, and increased stress.  *Id.*

Plaintiff spoke about his deteriorating heath and COVID-19 exposure "on many occasions" with Defendant Haque, who said there was "nothing" he could do and that Plaintiff "should suffer the consequences" because "he is in jail."  *Id.* at 12-13.  Plaintiff "engaged with" Defendants Lockwood and Schneider, who denied his reasonable accommodation requests and similarly asserted that, as a prisoner, he would have to

---

[1] The recitation of facts is drawn from the Amended Complaint, the contents of which must be accepted as true for purposes of initial review under 28 U.S.C. §1915A(b).  *See Erickson*, 551 U.S. at 93-94.

suffer the consequences of the pandemic, or "he should not be in jail."  *Id*. at 13.  All three

Defendants denied relief, discriminated against Plaintiff, and deliberately refused to take

more action to mitigate the excessive risk of COVID-19 exposure.  *Id*. at 13-14.  Many of

Plaintiff's "roommates and dorm-mates were Covid-19 positive and were showing

symptoms of Covid-19 but [were] neither tested nor segregated."  *Id*. at 14.

Defendant Morley, the Chief Medical Officer for DOCCS, ignored Plaintiff's

petitions, letters, and grievances, suggested that Plaintiff seek medical parole, which was

unsuccessful, and "pushed the problem to local medical staff."  *Id*.  He has also "failed to

implement DOCCS['] own Covid-19 policies" and "ignore[d] CDC and health guidelines."

*Id*.  Defendant DOCCS caused Plaintiff "irreparable harm from excessive exposure to

Covid-19."  *Id*.  Defendant Cuomo failed to protect Plaintiff "by not mitigating the impact

of Covid-19 in prisons" or reducing "prison overcrowding."  *Id*. at 14-15.

Plaintiff has severe underlying conditions that place him at the "highest risk of

death" from COVID-19, including stroke, diabetes, obesity, high blood pressure,

respiratory illness, asthma, allergies, high cholesterol, and low vitamin D, iron, vitamin B-

12 and testosterone.  *Id*. at 17-18.  Plaintiff "suffered increasingly since the onset" of the

COVID-19 pandemic in March 2020, and Defendants' "lack of" action "directly impacted

his health and well-being."  *Id*. at 18.  Further, Plaintiff's exposure to "constant and

unprecedented" second-hand tobacco smoke during his incarceration increases his risk

of death from COVID-19.[2]  *Id*.  Plaintiff also experienced an "[i]ncreased fear of death"

---

[2] Plaintiff has another action pending in this Court that relates to his second-hand smoke allegations.  *See Tripathy v. Schneider*, 6:21-cv-06339-FPG.

and "negative impact on mental health and overall well-being," as well as increased stress, high blood pressure, asthma, pulmonary disease, and "bone density ailments." *Id.*

Plaintiff alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment, his Fourteenth Amendment right to equal protection, and his rights under the ADA and RA.  Plaintiff requests an expedited scheduling of his case, an order restraining DOCCS staff from retaliating against him, and monetary damages.  ECF No. 5 at 30-31.

IV.   <u>**Constitutional Claims**</u>

A.   **Conditions of Confinement**

The Court construes Plaintiff's allegation that Defendants exposed him to harmful conditions of confinement by failing to enforce pandemic safety protocols as claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment.

To state a claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of "the minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297, 298 (1991) (internal quotation marks omitted); *see also Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996).

"To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  Exposure to COVID-19 has been found to constitute such a risk, *see Fernandez-Rodriguez*, 470 F. Supp. 3d 323, 349-51 (S.D.N.Y. 2020) (collecting cases), and "[c]ourts have long recognized that prison officials

6

have an Eighth Amendment duty to protect inmates from exposure to communicable disease," *Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 439 (D. Conn. 2020) (citing *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)) ("[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease.").

"To meet the subjective element, the plaintiff must show that the defendant acted with more than mere negligence[;] . . . the prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker*, 717 F.3d at 125 (internal quotation marks, alteration, and citation omitted). "Evidence that a risk was 'obvious or otherwise must have been known to a defendant' may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." *Id*. (quoting *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003)).

The Amended Complaint alleges that COVID-19 safety protocols were not enforced at Gowanda, and that in the face of his express complaints to Defendants Schneider, Lockwood, and Haque, they told him that he should not have been sentenced to prison if he did not want to experience such conditions. They also allegedly refused to take any additional action to protect prisoners from being exposed to COVID-19. The Court finds that these allegations adequately allege Defendants' personal involvement in the safety protocol deficiencies alleged by Plaintiff. Generously construing the pleadings, as the Court must, Plaintiff's conditions of confinement claim is sufficient to proceed to service against Schneider, Lockwood, and Haque.

His claim fails, however, with respect to Defendant's Morley, Annucci, and Cuomo. To the extent that Plaintiff alleges that they failed to respond to his complaints,

the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement.  *See Haley v. Tryon*, 12 F. Supp. 3d 573, 576 (W.D.N.Y. 2014); *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 374 (W.D.N.Y. 2005) (finding no personal involvement where sole complaint is that supervisory officials ignored letter alleging unconstitutional conduct).  At most, however, Plaintiff is alleging that Morley did not respond to his written complaints to Plaintiff's satisfaction.  The claims against Morley, Annucci, and Cuomo as to the conditions of confinement at Gowanda are dismissed with prejudice for lack of personal involvement. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) ("[A] defendant in a Section 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority."); *Breton v. Lamont*, No. 3:21-CV-719 (SRU), 2021 WL 3726011, at *5 (D. Conn. Aug. 23, 2021) (finding "bare allegation" that plaintiff wrote to governor "insufficient to establish" governor's personal involvement in alleged Eighth Amendment violation related to COVID-19).

   **B.    Inadequate Medical Care**

   To the extent that Plaintiff reasserts a violation of his Eighth Amendment right to adequate medical care, this claim is dismissed with prejudice.

   As stated in the initial screening order, for the denial of medical care to amount to the "cruel or unusual punishment" prohibited by the Eighth Amendment, Plaintiff must show that Defendant's actions or omissions amounted to "deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) ("A serious medical condition exists where 'the failure

to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.' " (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  This standard includes both an objective and a subjective component.  *Wilson*, 501 U.S. at 298-99.  With respect to the objective component, the court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights.  *Id.*  With respect to the subjective component, the court must consider whether the deprivation was brought about by Defendant in wanton disregard of those rights.  *Id*.

"A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  *Estelle*, 429 U.S. at 106.  Likewise, "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."  *Chance*, 143 F.3d at 703.

In the Amended Complaint, Plaintiff again alleges in wholly conclusory fashion that Defendants disregarded his medical vulnerabilities as they relate to the COVID-19 pandemic.  As stated above, Morley is accused of ignoring Plaintiff's petitions, letters, and grievances, "push[ing] the problem to local medical staff," and suggesting that Plaintiff seek medical parole, which was unsuccessful.  It is yet unclear what COVID-19 policies Morley and Haque, as Gowanda's health services director, failed to implement at the facility level, what specific medical relief was refused by them or any other provider, and

how these Defendants were personally involved in Plaintiff's medical treatment, if at all. Thus, even assuming that Plaintiff's claim meets the objective component, he does not inadequate treatment, personal involvement, or deliberate indifference on the part of any named Defendant.  This claim is dismissed with prejudice.

C.      **Equal Protection**

Plaintiff again alleges that Defendants violated his Fourteenth Amendment right to equal protection by "discriminating against him . . . based on his severe health conditions, while DOCCS actions (or lack-of) puts him at severe risk of death by giving him no choice, no recourse and forcing him to be housed in such extremely dire and risky prison conditions."  ECF No. 5 at 28.

As set forth in the initial screening order, a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  At its core, equal protection prohibits the government from treating similarly situated persons differently.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999). Generalized allegations are insufficient to make out an equal protection claim. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) ("When intent is an element of a constitutional violation, . . . the primary focus is not on any possible animus directed at

the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff.").

In order to claim that Defendants' conduct violates his equal protection rights, Plaintiff must allege that:

> (1) . . . compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

*FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992) (citing *Wayte v. United States*, 470 U.S. 598, 608-09 (1985)).  The amended pleadings fail to correct the deficiencies of the original Complaint.   Again, there is no indication of selective treatment based on Plaintiff's medical vulnerabilities, the exercise of constitutional rights, or a bad faith intent to injure.  "[A] plaintiff's mere subjective belief that he was discriminated against does not sustain a discrimination claim."  *Sethi v. Narod*, 12 F. Supp. 3d 505, 536 (E.D.N.Y. 2014) (internal quotation marks and alterations omitted).   Plaintiff's equal protection claim is dismissed with prejudice.

### D.    ADA and RA Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services."  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (internal quotation marks omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Id.* (quoting 42 U.S.C. § 12132).   To meet this requirement, " 'reasonable accommodation' may have to be provided to the qualified individual."  *Id.* at 73 (internal

11

quotation marks omitted).   Similarly, Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   29 U.S.C. § 794(a).   "[A]lthough there are subtle differences between these disability acts, the standards adopted by Title II of the ADA for State and local government services are generally the same as those required under section 504 of federally assisted programs and activities." *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (internal quotation marks omitted).   Individuals can be sued only in their official capacities under these statutes.   *Keitt v. New York City*, 882 F. Supp. 2d 412, 425-26 (S.D.N.Y. 2011).

To establish a prima facie violation of either statute, a plaintiff must show that: (1) he "is a qualified individual with a disability"; (2) "defendants are subject to one of the Acts"; and (3) he was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of [his] disability."   *D.K. v. Teams*, 260 F. Supp. 3d 334, 368 (S.D.N.Y. 2017) (quoting *Powell v. Nat. Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted)).   Here, Plaintiff alleges that while he received certain medical accommodations, including a sneaker pass, a lower floor pass to avoid stairs, and a pass to engage in desk jobs with limited or no physical work, he was denied "an accommodation from Covid-19." ECF No. 5 at 27.   Plaintiff requested to be "placed in a single man room or a Covid-19 free dorm for high risk individuals or temporary home confinement."   *Id*.   He was "denied relief" and "ridiculed" by Haque and Lockwood, "who said they are either not interested or not able to provide the accommodations as they have bigger problems to deal with" and that "if it

bothers [Plaintiff,] he should not have come to jail." *Id*.   Plaintiff further alleges that he "was denied the opportunity to participate in programs, spend his time in library and law library and yard and participate in normal activities enjoyed by other inmates" because "he was not given an accommodation which would have allowed him to participate in these programs." *Id*. at 27.

First, Plaintiff does not allege what "accommodation" he was denied with respect to such "programs" or "normal activities," including the library and the recreation yard.  Plaintiff states only that he was denied a single room, COVID-free housing, and release, none of which relate to the listed facility programs.  Second, there is no allegation that Defendants discriminated against Plaintiff on the basis of his medical conditions.  *See, e.g., Fowler  v. Dep't of Correction*, No. 3:18-CV-01635 (JAM), 2019 WL 2176304, at *4 (D. Conn. May 20, 2019) ("Because [plaintiff] does not allege that DOC discriminated against him because of his [medical conditions], he has not alleged plausible grounds for relief as to his alleged mistreatment relating to" those conditions.).  Plaintiff's ADA and RA claims are dismissed with prejudice.

## **CONCLUSION**

For  the  reasons  set  forth  above,  Plaintiff's  Eighth  Amendment  conditions  of confinement claim will proceed to service against Defendants Schneider, Lockwood, and Haque.   His remaining claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915A, and Defendants Morley, Annucci, Cuomo, and DOCCS are terminated as parties to this action.

**ORDER**

IT HEREBY IS ORDERED that the Clerk of Court is directed to add Haque as a Defendant and cause the United States Marshals Service to serve copies of the Summons, Amended Complaint and this Order upon Defendants Schneider, Lockwood, and Haque without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor;

FURTHER, that the Clerk of Court is directed to forward a copy of this Order by email to Ted O'Brien, Assistant Attorney General in Charge, Rochester Regional Office <Ted.O'Brien@ag.ny.gov>; and

FURTHER, that the Clerk of Court utilize the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website as needed;

FURTHER, that pursuant to 42 U.S.C. § 1997e(g), Defendants are directed to respond to the Amended Complaint.

IT IS SO ORDERED.

Dated: October 1, 2021
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
District Judge, United States District Court

14