UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SANJAY TRIPATHY,

                Plaintiff,

      v.

ANDREA N. SCHNEIDER, *Acting
Superintendent, Gowanda CF, Gowanda, NY*,
D. LOCKWOOD, *Acting Deputy Superintendent
of Security, Gowanda CF, Gowanda, NY*, DR.
S. HAQUE, *MD, Facility Health Services
Director, Gowanda CF*, EDWARD BURNETT,
*Superintendent Fishkill CF*, SHARON FROST,
*DSA Fishkill CF*, AKINOLA AKINYOMBO,
*DSH Fishkill CF*, D.S.P LEANNE LATONA,
*Superintendent Collins CF*, RICHARD MOFFIT,
*DSA Collins CF*,

                Defendants.

_____

**DECISION AND ORDER**

6:21-CV-6392 FPG CDH

## INTRODUCTION

*Pro se* plaintiff Sanjay Tripathy ("Plaintiff") was previously incarcerated at Gowanda Correctional Facility ("Gowanda"), Fishkill Correctional Facility ("Fishkill"), and Collins Correctional Facility ("Collins"). Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that defendants Andrea N. Schneider, D. Lockwood, Dr. S. Haque, Edward Burnett, Sharon Frost, Akinola Akinyombo, D.S.P. Leanne Latona, and Richard Moffit (collectively, "Defendants")—who are or were all prison officials at these three correctional facilities—violated his Eighth Amendment rights by exposing him to risks related to COVID-19. Currently pending before the Court is a motion by Plaintiff for leave to depose non-party staff from the New York State

Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 216). Also before the Court is Plaintiff's motion pursuant to Federal Rule of Civil Procedure 11 for sanctions against defense counsel Assistant Attorney General ("AAG") Muditha Halliyadde. (Dkt. 221). In addition, Defendants have requested sanctions against Plaintiff (Dkt. 223 at 2, ¶ 12) and filed a motion to file a sur-reply in connection with the briefing on Plaintiff's Rule 11 motion. (Dkt. 227).

For the reasons discussed below, Plaintiff's motions to depose non-party DOCCS staff (Dkt. 216) and for Rule 11 sanctions (Dkt. 221) are denied. Defendants' request for sanctions (Dkt. 223 at 2, ¶ 12) is denied and Defendants' motion to file a sur-reply (Dkt. 227) is denied as moot.

## BACKGROUND

### I.    Pleading History

Plaintiff commenced this action on May 20, 2021, while he was still incarcerated, bringing claims specifically arising out of his incarceration at Gowanda. (Dkt. 1). District Judge Frank P. Geraci, Jr. screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and dismissed all of Plaintiff's claims with leave to amend. (Dkt. 2). Judge Geraci subsequently screened Plaintiff's amended complaint (Dkt. 5) and allowed Plaintiff to proceed to service only on an Eighth Amendment claim that defendants Schneider, Lockwood, and Haque exposed him to harmful conditions of confinement by failing to enforce COVID-19 safety protocols at Gowanda. (Dkt. 7).

Magistrate Judge Marian W. Payson, to whom this case was previously referred, later granted Plaintiff leave to file a second amended complaint to add as

defendants Burnett, Frost, Akinyombo, Latona, and Moffitt, and to assert analogous COVID-19-related Eighth Amendment claims arising out of his subsequent incarceration at Fishkill and Collins. (Dkt. 35). Plaintiff's second amended complaint (Dkt. 36) is the operative complaint in this action to the extent that it asserts Eighth Amendment conditions of confinement claims related to Defendants' failure to enforce COVID-19 safety protocols at Gowanda, Fishkill, and Collins. (*See* Dkt. 49; Dkt. 184; Dkt. 187).

## II.    **<u>Depositions of Non-Party DOCCS Staff</u>**

Plaintiff has made several attempts throughout this litigation to depose non-party DOCCS employees. He first filed a motion on May 4, 2023, for a subpoena to depose DOCCS Deputy Commissioner and Chief Medical Officer Carol Moores. (Dkt. 118). On November 9, 2023, the Court denied this motion without prejudice, advising Plaintiff that he must first depose the party Defendants, and "[f]ollowing those depositions, if he still believes a deposition of Moores is appropriate, he may so move and explain why additional testimony from her would be relevant and important to his claims." (Dkt. 133 at 16).

Nevertheless, on November 12, 2023, Plaintiff filed a notice of depositions for three party defendants as well as a "DOCCS Representative(s) with information and knowledge" of various COVID-19-related topics. (Dkt. 137 at 3). Plaintiff later moved on December 8, 2023, for the Court to issue a subpoena to a non-party DOCCS representative so he could conduct a deposition on the same COVID-19-related topics. (Dkt. 172). The Court denied this motion on June 21, 2024, and "reiterate[d] its earlier

instruction that Tripathy should first depose the party defendants concerning the COVID-19 policies implemented at each of the three facilities" and that any subsequent motion for a subpoena to depose any non-party "should include an explanation of why additional testimony is relevant and important to his claims." (Dkt. 184 at 14).

Plaintiff filed the instant motion for depositions on December 12, 2024, explaining that he has now deposed six of the party defendants and that "[t]hese depositions revealed that the named defendants possessed limited knowledge regarding some key issues, indicating that DOCCS staff are the appropriate source of the information." (Dkt. 216 at 2). According to Plaintiff, the following four topics "remain unresolved and necessitate" the deposition of non-party DOCCS staff:

> **Medical Parole:** The named defendants disclaimed direct knowledge of the denial of Petitioner's medical parole application. Information is needed regarding who made the denial decision, the analysis performed, and the individuals consulted.
>
> **COVID-19 Policies and Procedures:** DOCCS formulated policies including the absence of special dorms for high-risk individuals and the lack of specific self-isolation programs or conditions. Information is needed regarding who made these medical decisions and the rationale behind them. This includes masking, sanitation, testing and vaccination protocols.
>
> **Severe Underlying Health Conditions:** Information is needed regarding the definition of severe underlying health conditions and the decisions regarding special treatment to minimize adverse outcomes, including who made these decisions and the rationale.
>
> **Habeas Relief:** DOCCS opposed Petitioner's federal and state habeas petitions for early release due to severe COVID-19 risks. Information is needed regarding who made the decision, what analysis was conducted, who all were consulted, to oppose these petitions and the rationale. Only relevant factual information is sought. As this Court is aware the

> Federal Government released 1000s of high risk inmates to home confinement. Further just today President Biden also commuted their sentences so they don't have to go back to prison. Nevertheless, DOCCS and The State of New York actions and rationale with the same are vital as part of this lawsuit.

(*Id.* at 2-3) (citations to the record omitted). Plaintiff does not identify any specific DOCCS employees he wants to depose. Rather, he states that if the Court grants his motion, he "will then collaborate with defense counsel to determine appropriate individuals and schedule depositions." (*Id.* at 3-4). Plaintiff also requests an amendment of the scheduling order to accommodate the requested depositions and an oral argument and evidentiary hearing on his motion.[1] (*Id.* at 4).

Defendants oppose Plaintiff's proposed depositions of non-party DOCCS staff. (Dkt. 218 at ¶ 1). Specifically, Defendants assert that the only remaining claims under Plaintiff's operative complaint are Eighth Amendment conditions of confinement claims, which they characterize as "directed to the implementation of COVID-19 protocols in" Gowanda, Fishkill, and Collins. (*Id.* at ¶ 2). Defendants note that Plaintiff's operative complaint "does not challenge medical parole, COVID-19 policies and procedures, or his request for habeas relief." (*Id.* at ¶ 3). Defendants also claim that Dr. Haque is the only employee at DOCCS "who could be identified to provide details about the definition of severe underlying health conditions" and that they "are unable to identify any DOCCS employee who has the knowledge about implementation of COVID-19 protocols in each [of] these facilities other than the

---

[1]    The Court has determined that neither an oral argument nor an evidentiary hearing is necessary for the disposition of these motions and accordingly resolves them based on the parties' papers.

Defendants named in Plaintiff's operative complaint." (*Id.* at ¶¶ 4-5). Additionally, Defendants strongly object to an extension of the discovery deadline, as an extension would "greatly prejudice Defendants in this action who [have] waited over three years for a resolution of this case." (*Id.* at ¶ 7).

In his reply, Plaintiff argues that the denial of his medical parole requests and habeas petitions are "directly related to his conditions of confinement and [] therefore cognizable." (Dkt. 219 at 2). Plaintiff asserts that "[d]espite these matters being clearly outlined in the complaint, [Defendants have] failed to provide any discovery materials pertaining to them." Regarding COVID-19 policies and procedures, specifically, Plaintiff claims that:

> The deposition of Dr. Haque from Gowanda CF unequivocally demonstrated that he lacked expertise and responsibility regarding DOCCS-wide COVID-19 policies and procedures, and the decisions regarding medical parole. Dr. Haque testified that COVID-19 policies were set at the DOCSS level and merely implemented at Gowanda. He further clarified that his opinions regarding high-risk individuals, medical parole, and the impact of COVID-19 policies on Plaintiff were based on his general medical knowledge, not on specific DOCCS directives or analysis. Therefore, depositions of appropriate DOCCS personnel, such as the Chief Medical Officer and staff from the Office of Counsel, are essential to understand the rationale behind statewide policies[.]

(*Id.* at 2-3). Plaintiff also states that he "reserves the right to amend his complaint based on material information obtained through the requested DOCSS depositions." (*Id.* at 4).

## III.  **Inmate Liaison Committee ("ILC") Briefing Minutes**

Plaintiff's motion for Rule 11 sanctions against AAG Halliyadde stems from her alleged "misrepresentations and bad faith conduct regarding the production of

Inmate Liaison Committee (ILC) briefings/minutes related to COVID-19 at Gowanda[.]"[2] (Dkt. 221 at 1). On June 21, 2024, in an attempt to help the parties resolve an ongoing dispute over Defendants' production of COVID-19-related communications, the Court ordered Defendants to "search for and produce all Covid-19-related ILC briefings" distributed at Gowanda between January 2020 and March 2021, Fishkill between January 2020 and December 2021, and Collins between January 2020 and December 2022. (Dkt. 184 at 13).

On July 23, 2024, AAG Halliyadde submitted a declaration from Megan Yaiser, DOCCS's Assistant Commissioner for the Health Services, stating that DOCCS did not distribute written briefings related to COVID-19 to ILC members during these time periods. (Dkt. 188 at 6, ¶ 5). AAG Halliyadde's own declaration averred that "[a]ll such briefings were verbal communications." (*Id.* at 1, ¶ 4). The same day, Plaintiff filed a motion to compel, asserting that "[t]his is 100% a lie, a fabrication and an attempt to bury the truth as [Plaintiff] has himself seen/read (on multiple occasions of more than 5-6 times) that minutes of these ILC . . . Meetings related [to] Covid-19 were posted on the dorm notice board[.]" (Dkt. 189 at 2). The Court denied Plaintiff's motion to compel because he failed to meet and confer in good faith pursuant to Rule 37(a)(1), but directed the parties to confer regarding whether "written ILC meeting minutes that reflected the content of the verbal briefings provided by DOCCS staff to the ILC members . . . exist for the relevant facilities

---

[2]    As discussed in the Court's June 21, 2024 Order, the correctional facility superintendents regularly briefed their facility's respective ILC throughout the COVID-19 pandemic. (*See* Dkt. 184 at 13).

during the relevant time periods and, if so, whether those minutes are in the possession of DOCCS."[3] (Dkt. 190 at 2).

Plaintiff then filed a letter requesting that Defendants produce all COVID-19-related ILC "minutes/communications" (Dkt. 191). AAG Halliyadde responded that she was "working with relevant parties to see whether there are any documents responsive to this request." (Dkt. 192). Defendants subsequently produced two sets of responsive documents. (Dkt. 200). Plaintiff then moved to compel production of additional "minutes/communications," in part, because Defendants had not produced any ILC briefing minutes from Gowanda. (Dkt. 203; Dkt. 205). On November 7, 2024, the Court denied Plaintiff's motion to compel, finding that Defendants "searched in good faith for such records from Gowanda and found none." (Dkt. 209 at 4). However, on November 22, 2024, Defendants produced a set of ILC briefing minutes from Gowanda, stating that "[i]n further search for documents, Defendant Schneider was able to find . . . ILC briefing minutes that belong[ed] to Gowanda CF." (Dkt. 215 at 1).

---

[3]    The parties' dispute over whether the ILC briefings were in writing or just verbal appears to have evolved into a collateral dispute over whether Defendants were required to produce ILC "briefing minutes" or "meeting minutes." (*See* Dkt. 200 at 1). Notwithstanding, the parties were directed to confer regarding the existence of "written ILC meeting minutes that reflected the content of the verbal briefings[.]" (Dkt. 190 at 2). Whether those are labeled as "briefing minutes" or "meeting minutes," the scope of the documents at issue is clear. And, as Judge Payson resolved subsequent disputes regarding Defendants' production of such documents without belaboring this distinction, it is evident that the documents Defendants ultimately produced were consistent with the Court's directive.

On December 1, 2025, Plaintiff emailed AAG Halliyadde, apprising her that he intended to file a motion for Rule 11 sanctions in connection with the belated production of ILC briefing minutes from Gowanda, and attached a safe harbor notice and a notice of motion. (Dkt. 221-1). Plaintiff says that "there was no response from Defense Counsel on the subject," and he filed his instant motion for Rule 11 sanctions on December 23, 2024. (Dkt. 221 at 2). Plaintiff requests a formal, written apology by AAG Halliyadde and an award of reasonable expenses including attorney's fees. (*Id.* at 4). Defendants filed a response opposing Plaintiff's motion for Rule 11 sanctions, arguing that: (1) Plaintiff failed to properly serve the safe harbor notice; (2) the Court already addressed this same dispute in its November 7, 2024 decision; (3) defense counsel made a good faith effort to locate ILC briefing minutes from Gowanda and did not intentionally withhold them; and (4) *pro se* litigants are not entitled to an award of attorney's fees. (Dkt. 223-1 at 2-10).

Plaintiff filed a reply. (Dkt. 224). Defendants then filed a second response to Plaintiff's motion that appears to be identical to their first response, except for one minor change in the memorandum of law.[4] (Dkt. 225). Plaintiff then filed a second

---

[4]    Defendants' first memorandum of law includes the sentence: "Plaintiff's Rule 11 motion against defense counsel should be dismissed because Plaintiff's Rule 11 motion: (1) was directed to a discovery dispute *in another lawsuit* rather than to a proper subject of Rule 11." (Dkt. 223-1 at 5) (emphasis added). In the second memorandum of law, the sentence now reads: "Plaintiff's Rule 11 motion against defense counsel should be dismissed because Plaintiff's Rule 11 motion: (1) was directed to a discovery dispute rather than to a proper subject of Rule 11." (Dkt. 225-1 at 5). There do not appear to be any other changes. The Court advises defense counsel, to the extent that Docket No. 225 was not filed in error, that such minor corrections do not warrant a separate filing event, but can be brought to the Court's attention via letter.

reply addressing both Defendants' "initial response" and "corrected response," wherein he claims that Defendants acknowledged receiving the safe harbor notice attached to his December 1st email. (Dkt. 226 at 2). Defendants subsequently moved to file a sur-reply to address Plaintiff's claim that Defendants acknowledged receiving the safe harbor notice. (Dkt. 227). Plaintiff opposes Defendant's motion to file a sur-reply. (Dkt. 229). Plaintiff has also filed a letter stating that "the Rule 11 Safe Harbor Notice, a copy of which was previously served via email on December 1, 2024, has now been formally and properly served on the Defendant's Counsel, Muditha Halliyadde, on January 7, 2025 . . . via a process server." (Dkt. 231 at 2).

This matter has been referred to the undersigned for the handling of all non-dispositive pretrial matters. (Dkt. 230).

## **DISCUSSION**

### I.  **Motion to Depose Non-Party DOCCS Staff**

#### A.  **Legal Standard**

While neither side cites any legal authority to support their respective positions regarding Plaintiff's proposed depositions of non-party DOCCS staff, the Court understands the parties' dispute as concerning the relevance of the proposed deposition topics.[5]

---

[5]    Defendants also claim that there are no non-party employees at DOCSS who have knowledge of (1) "the definition of severe underlying health conditions" or (2) "the implementation of COVID-19 protocols in each [of] these facilities." (Dkt. 218 at ¶¶ 4-5). However, Rule 30(b)(6)—which is arguably the most applicable discovery mechanism for what Plaintiff is requesting—permits "depositions in order to obtain testimony binding on [an organization] even though the testimony [is] likely to essentially duplicate information which ha[s] already been stated in an individual

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "'Relevance' under Rule 26 is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Est. of Tillman by Tillman v. City of N.Y.*, 345 F.R.D. 379, 384 (E.D.N.Y. 2024) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). The party moving to compel discovery bears the burden of demonstrating relevance. *Beverley v. New York City Health & Hosps. Corp.*, No. 18-CV-08486 (ER), 2024 WL 2125402, at *7 (S.D.N.Y. May 13, 2024). Conclusory statements by the party that the discovery sought is relevant do not satisfy this burden. *Id.; Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016).

"The Court has broad discretion in determining relevance for discovery purposes." *Cuomo v. N.Y. State Assembly Judiciary Comm.*, 683 F. Supp. 3d 258, 267 (E.D.N.Y. 2023), *reconsideration denied*, 727 F. Supp. 3d 231 (E.D.N.Y. 2024) (quotation omitted); *see also Dongguk Univ.*, 270 F.R.D. at 73 ("Generally, courts have

---

deposition." *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010). Such depositions can be useful because "[a] party may also have an interest in getting the [organization's] testimony on an issue, rather than the testimony of an individual. *Id.* A Rule 30(b)(6) witness need not have personal knowledge of the proposed deposition topics. *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012). Defendants' assertions do not clearly establish that, if the proposed depositions were relevant or otherwise within the scope of discovery, DOCCS could not designate and prepare an adequate representative to testify on its behalf. *See Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559-PGG-KHP, 2018 WL 11250294, at *2 (S.D.N.Y. Dec. 28, 2018). The Court therefore finds that, for the purposes of resolving this motion, the dispositive issue is whether the proposed deposition topics are relevant.

been reluctant to define discovery relevance in the abstract, instead tending to ground their decisions on the particular facts of the case."). The Court also has discretion to limit discovery that is disproportionate to the needs of the case. *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 318 F.R.D. 9, 14 (E.D.N.Y. 2016). "[A] non-party especially should not be burdened with preparation for a broader array of topics than is proportional to the needs of the case." *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 121 (S.D.N.Y. 2019), *on reconsideration in part,* 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019).

### B.    Plaintiff's Proposed Deposition Topics are not Relevant and are Disproportionate to the Needs of the Case

Here, Plaintiff contends that "[t]he information sought is directly relevant to [his] claims and necessary to establish liability." (Dkt. 219 at 2). Defendants argue that the proposed deposition topics are not relevant to Plaintiff's remaining Eighth Amendment conditions of confinement claims. (Dkt. 218 at ¶¶ 2-3). The Court agrees with Defendants that Plaintiff's remaining claims are about the implementation of COVID-19 safety protocols in Gowanda, Fishkill, and Collins by the specific defendants named in this action, each of whom are alleged to have been personally involved in Plaintiff's alleged constitutional violations. Accordingly, Plaintiff has not met his burden of demonstrating that his proposed deposition topics are relevant to any issue in this case.

"To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subject test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). For the objective prong, "the

plaintiff must demonstrate that the conditions of his confinement result[ed] in unquestioned and serious deprivations of basic human needs." *Id.* (quotation omitted). "This prong is satisfied by a showing that the plaintiff's 'conditions [of confinement] . . . pose an unreasonable risk of serious damage to his health,' that is, a deprivation of 'basic human needs such as food, clothing, medical care, and safe and sanitary living conditions.'" *Nellis v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 22-CV-6429 CJS, 2025 WL 306532, at *6 (W.D.N.Y. Jan. 27, 2025) (quoting *Smith v. N.Y. State*, No. 23-6601-CV, 2024 WL 4746554, at *2 (2d Cir. Nov. 12, 2024)). In the COVID-19 context, "the relevant inquiry is whether [the plaintiff] has shown a substantial risk of serious harm from COVID-19 . . . in light of the countermeasures that the <u>facility</u> has in place." *Chunn v. Edge*, 465 F. Supp. 3d 168, 201 (E.D.N.Y. 2020) (emphasis added). For the subjective prong, "the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference." *Jolly*, 76 F.3d at 480 (quotation omitted). "To establish deliberate indifference, a plaintiff must show that a prison official . . . 'has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'" *Nellis*, 2025 WL 306532, at *6 (quoting *Smith*, 204 WL 4746554, at *2 (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

Beginning with the denial of Plaintiff's medical parole application, Plaintiff says that "[i]information is needed regarding who made the denial decision, the analysis performed, and the individuals consulted." (Dkt. 216 at 2). However, Plaintiff has not demonstrated how this topic is relevant to his conditions of

confinement claims or any of the defenses alleged by Defendants in this action. Plaintiff does briefly reference the denial of medical parole in his complaint as a "Step[] Taken . . . for Relief" and attaches to his complaint applications for medical parole and written denials from DOCCS. (*See* Dkt. 36 at 10, 31-35). However, neither Judge Geraci, in screening Plaintiff's initial complaints, nor Judge Payson, in allowing Plaintiff to amend his complaint, has ever construed Plaintiff as challenging the denial of his medical parole in this action. (*See* Dkt. 2; Dkt. 7; Dkt. 35). Plaintiff is not entitled to discovery on a topic merely because it is referenced in his complaint, where it otherwise has no bearing on any issue in this case. *See Polaris PowerLED Techs., LLC v. Nintendo Co.*, 623 F. Supp. 3d 1132, 1137 n.4 (W.D. Wash. 2022) ("The court reminds Polaris that a party is not entitled to discovery of a factual issue merely because it is alleged in the pleadings."). Medical parole in New York involves distinct procedural issues and statutory considerations, *see generally Aponte v. Bd. of Parole*, No. 9:17-CV-0305-GTS-DEP, 2017 WL 8780766 (N.D.N.Y. July 14, 2017); *Ifill v. Wright*, 94 A.D.3d 1259 (3d Dep't 2012), that have no relevance to the conditions of the facilities where Plaintiff was incarcerated, the facilities' COVID-19 safety protocols, any action undertaken by a defendant in this case, or any defendant's state of mind relative to Plaintiff's conditions of confinement. Plaintiff's claim that the deposition of a non-party regarding the denial of his medical parole applications would be relevant and necessary to establish Defendants' liability in this action is unfounded.

Next, Plaintiff has not demonstrated how his federal and state habeas petitions are relevant to this case. Plaintiff says that "[i]nformation is needed regarding who made the decision [to oppose his petitions], what analysis was conducted, who all were consulted, to oppose these petitions and the rationale." (Dkt. 216 at 3). However, the State's litigation of these habeas petitions has no relevance to this case. The habeas proceedings themselves do not bear on the conditions of Plaintiff's confinement, and Plaintiff has not shown that any of the defendants were involved in or knew about those proceedings, or, even if they were involved, how that would be relevant to the Eighth Amendment claims that are the subject of this action. (*See* Dkt. 219 at 3; Dkt. 232-1 at 13-14; Dkt. 232-2 at 23). "[C]ourts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses." *Collens v. City of N.Y.*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). Moreover, as the Court understands it, Plaintiff seeks information that, in addition to not being relevant, is privileged or would have been litigated in the federal and state habeas proceedings.

Plaintiff's final two proposed deposition topics are not relevant under Rule 26(b)(1) and disproportionate to the needs of the case. While aspects of DOCCS's COVID-19 policies and procedures are relevant in a broad sense, Plaintiff is singularly focused on obtaining discovery regarding the formulation of statewide COVID-19 policies at the highest level of DOCCS, such as "who made these medical decisions and the rationale behind them." (Dkt. 216 at 3). That information has no

utility here. How DOCSS developed its statewide COVID-19 policies has no bearing on the objective conditions at the three correctional facilities. Nor does it have any bearing on the subjective state of mind of the defendants in this case, none of whom are alleged to have been involved in the development of DOCCS's statewide COVID-19 policies. Plaintiff's dissatisfaction with his deposition of Dr. Haque because he "testified that COVID-19 policies were set at the DOCCS level and merely implemented at Gowanda" (Dkt. 219 at 3) is misplaced, as Plaintiff's claims in this case are fundamentally about the implementation of such policies and other safety measures instituted by Defendants in the correctional facilities where he was incarcerated. Having had ample opportunity to obtain discovery on this issue through depositions of the party defendants, Plaintiff has not shown any basis to permit the deposition of a non-party on issues outside the scope of relevant discovery.

For the same reasons, Plaintiff's proposed deposition topic of "the definition of severe underlying health conditions and the decisions regarding special treatment to minimize adverse outcomes" (*see* Dkt. 216 at 3) is not relevant and is disproportionate to the needs of the case. The only context Plaintiff gives for this topic is a citation to his proposed third amended complaint (which he was not permitted to file (*see* Dkt. 184; Dkt. 187)), where he discusses his "severe underlying health [medical] conditions that place him at 'highest risk of death [pain, anguish and suffering]' from Covid-19." (Dkt. 179-1 at 11) (bracketed text in original). Drawing on additional context from his reply, the Court understands this topic as seeking "to understand the rationale behind statewide policies" regarding protocol for high-risk individuals, "including the

lack of separate dorms for high-risk individuals [and] the criteria for identifying high-risk individuals." (*See* Dkt. 219 at 3). But like COVID-19 policies and procedures more generally, the rationale behind statewide policies for high-risk individuals has no bearing on the objective conditions at the three correctional facilities or the subjective state of mind of any defendant in this case.

In sum, Plaintiff has not met his burden of demonstrating the relevance of his proposed deposition topics. As these topics are outside the permitted scope of discovery under Rule 26(b)(1), Plaintiff's motion for leave to depose non-party DOCCS staff (Dkt. 216) is denied. Plaintiff's request to extend the fact discovery deadline to accommodate such depositions (*Id.* at 4) is therefore also denied.

## II.    <u>Motion for Rule 11 Sanctions</u>

### A.    <u>Legal Standard</u>

Rule 11(b) provides:

(b) "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The Court may impose an appropriate sanction on any attorney, law firm, or party that violates Rule 11(b) or is responsible for the violation.[6] Fed. R. Civ. P. 11(c)(1). "When deciding whether to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was utterly lacking in support." *Benitez v. King*, 298 F. Supp. 3d 530, 539 (W.D.N.Y. 2018) (quotation omitted). "Notably, 'even when a district court finds a violation of Rule 11, [t]he decision whether to impose a sanction for a Rule 11(b) violation is . . . committed to the district court's discretion.'" *Id.* at 540 (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)).

Rule 11(c)(2) sets forth specific procedural requirements that apply to a motion for Rule 11 sanctions. The motion must (1) be made separately from any other motion; (2) describe the specific conduct that allegedly violates Rule 11(b); and (3) be served in accordance with Rule 5. Fed. R. Civ. P. 11(c)(2). In addition, the motion "may not be presented to the court until the expiration of a twenty-one-day 'safe harbor' period, during which the alleged violator has the chance to withdraw or correct the challenged filing." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 543 (2d

---

[6]     The issue of whether a magistrate judge has authority to impose sanctions pursuant to Rule 11 is unsettled in the Second Circuit. *See Kiobel v. Millson*, 592 F.3d 78, 79 (2d Cir. 2010). However, because I am denying Plaintiff's motion for Rule 11 sanctions, I do so in a Decision and Order.

Cir. 2023). This provision requires service of the Rule 11 motion on the subject of the sanctions motion in order to trigger the 21-day safe harbor period. *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012). Any motion for Rule 11 sanctions that does not comply with these procedural requirements must be denied. *Adams v. Taylor*, 643 F. Supp. 3d 392, 395 (W.D.N.Y. 2022).

### B.    **Rule 11 Sanctions are Not Warranted**

Plaintiff argues that Rule 11 sanctions are warranted against AAG Halliyadde because of (1) her July 23, 2024 representation that written ILC briefings related to COVID-19 did not exist and were only verbal communications; (2) her allegedly bad faith interpretation of the Court's June 21, 2024 Order as pertaining only to verbal communications rather than written minutes; and (3) her belated production of ILC briefing minutes from Gowanda, which Plaintiff claims were "intentionally withheld to gain a tactical advantage." (Dkt. 221 at 3).

As a threshold matter, Defendants argue that Plaintiff's motion should be dismissed on procedural grounds because it was not served in accordance with Rule 5—rather, it was only emailed to AAG Halliyadde, who did not consent in writing to service by electronic means as required under Rule 5(b)(2)(E).  (Dkt. 223-1 at 3-4). The Court agrees. *See Sit n' Stay Pet Servs. Inc. v. Hoffman,* No. 17-CV-00116-LJV-JJM, 2019 WL 719825, at *2 (W.D.N.Y. Feb. 1, 2019) ("absent prior written consent, emailing does not meet the requirements of Rule 5") (quotation and alterations omitted), *adopted,* 2019 WL 718758 (W.D.N.Y. Feb. 20, 2019). However, because

Plaintiff subsequently filed his motion on CM/ECF and formally served it upon AAG Halliyadde, the Court will also address the merits of the motion, rather than decide solely on procedural grounds.

On the merits, the Court finds that Rule 11 sanctions are not warranted. First, AAG Halliyadde has credibly explained that she relied on the representation of DOCCS Assistant Commissioner Megan Yaiser, who stated that DOCCS did not distribute written briefings related to COVID-19 to ILC members. (*See* Dkt. 223 at 1, ¶ 3; Dkt. 188 at 6, ¶ 5). Defendants' subsequent production of written briefings does not evince a violation of Rule 11(b)(3). AAG Halliyadde's representation that briefings were verbal, made in reliance on an appropriately consulted DOCCS employee, was reasonable under the circumstances and not utterly lacking in support.

Second, as discussed *supra*, AAG Halliyadde did not act in bad faith with respect to the Court's prior directives regarding the production of ILC briefing minutes. Plaintiff's claim that the Court's June 21, 2024, Order "explicitly state[s] that these briefings include[] any and all communications/minutes, including those posted on notice boards at Gowanda CF" is patently false. (*See* Dkt. 221 at 1-2). The Court only instructed Defendants to produce "all Covid-19-related ILC briefings." (Dkt. 184 at 13). When a subsequent Court Order instructed the parties to confer regarding the existence of "meeting minutes that reflected the content of the verbal [ILC] briefings" (*see* Dkt. 190 at 2), and Plaintiff then made a request for "minutes/communications" (*see* Dkt. 191 at 2), Defendants provided Plaintiff with ILC briefing minutes from Fishkill and Collins and searched for the same from Gowanda

but found none. (*See* Dkt. 200). When Judge Payson was then presented with this exact same dispute on Plaintiff's motions to compel production, she found that Defendants had provided Plaintiff with the appropriate documents from Fishkill and Collins and made a good faith search for such documents from Gowanda. (*See* Dkt. 209 at 4). Thus, there is no basis to now find that AAG Halliyadde acted in bad faith with respect to the Court's prior orders.

Third, there is no basis to sanction AAG Halliyadde for the belated production of ILC briefing minutes from Gowanda. AAG Halliyadde reasonably relied on the DOCCS employees who searched for such documents at her request. (*See* Dkt. 200 at 3; Dkt. 223 at 6). Specifically, defendant Schneider has stated that he could not locate any ILC briefing minutes from Gowanda when AAG Halliyadde originally requested them, but he subsequently found copies of minutes while searching for other documents on or about November 18, 2024. (Dkt. 223 at 6, ¶ 4). Schneider then provided the minutes to AAG Halliyadde, who produced them to Plaintiff on November 22, 2024. (*Id.* at ¶ 5; Dkt. 215 at 1). Plaintiff's speculation that these documents were intentionally withheld is without support in the record. And in any event, Plaintiff does not explain how this belated production would warrant sanctions under Rule 11.

The Court concludes that Rule 11 sanctions are not warranted against AAG Halliyadde.[7] Plaintiff's motion for Rule 11 sanctions (Dkt. 221) and all relief

---

[7]     The Court accordingly need not and does not reach the issue of whether Plaintiff would be entitled to attorney's fees as a *pro se* litigant.

requested therein is denied. Because Plaintiff's motion is denied on the merits, Defendants' motion to file a sur-reply addressing an issue related to Plaintiff's safe harbor notice (Dkt. 227) is denied as moot.

### C.    Defendants' Request for Attorney's Fees

In AAG Halliyadde's declaration in opposition to Plaintiff's motion for Rule 11 sanctions, she states that Defendants request an award of attorney's fees against Plaintiff "for filing frivolous motions against defense counsel." (Dkt. 223 at 2, ¶ 12). "While a court may order a pro se litigant to pay legal fees, the court must adequately warn the pro se litigant before imposing such an order." *Papadimitriou v. Mullooly, Jeffrey, Rooney & Flynn, LLP*, No. 22-CV-2065-LDH-LB, 2023 WL 6385769, at *5 (E.D.N.Y. Sept. 29, 2023).

Plaintiff appears to have received a warning in a separate proceeding regarding his use of inflammatory language toward AAG Halliyadde. *See Tripathy v. Schneider,* No. 21-CV-6339-FPG-MJP, 2024 WL 4528763, at *5-6 (W.D.N.Y. Oct. 18, 2024) ("Tripathy is **WARNED** that any future violations of the Rules of Federal Civil Procedure, including Rule 11, or the Local Rules of Civil Procedure of this Court may result in monetary sanctions, in dismissal of this action, or in other appropriate sanctions. The Court now considers Tripathy on notice that he must **FOLLOW all** Federal Rules of Civil Procedure and Local Rules of Civil Procedure. If he violates any rule such that sanctions are warranted, he has been given the warnings to which he is entitled. In sum, Tripathy's *pro se* status is no longer going to shield him."). He was also subsequently ordered to pay attorney's fees in that proceeding because his

motion to compel was denied in full. *See Tripathy v. Schneider*, No. 21-CV-6339-FPG-MJP, 2024 WL 5152785, at *1 (W.D.N.Y. Dec. 18, 2024), *reconsideration denied*, 2025 WL 79861 (W.D.N.Y. Jan. 13, 2025).

However, it is not clear that Plaintiff would have understood this warning, issued in a separate proceeding, to apply in this matter. It is also unclear to what extent Plaintiff is aware of Defendants' instant request for sanctions, as Defendants do not reference the request in their memorandum of law and Plaintiff has not acknowledged it (despite filing several subsequent replies in connection with the Rule 11 motion). *See Murphy v. Bd. of Educ. of Rochester City Sch. Dist.*, 196 F.R.D. 220, 224 (W.D.N.Y. 2000) ("Before a court imposes any type of sanction, due process requires that court provide notice and opportunity to be heard.") (quotation omitted).

Accordingly, I find it more appropriate to issue a warning to Plaintiff, rather than impose sanctions at this time. **<u>Plaintiff is warned that any future motions or filings made in this case that are found to be for the purpose of harassing defense counsel, or any other person, may result in the imposition of sanctions, including the payment of attorney's fees.</u>**

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for leave to depose non-party DOCCS staff (Dkt. 216) is denied. Plaintiff's motion for Rule 11 sanctions against AAG Halliyadde (Dkt. 221) is denied. Defendants' motion to file a sur-reply in response to Docket No. 226 (Dkt. 227) is denied as moot. Defendants' request for attorney's fees (Dkt. 223 at 2, ¶ 12) is denied.

**SO ORDERED.**

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
    June 11, 2025